JS-6

1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10 **EASTERN DIVISION**

11

12 CYNDI W. P.,

No. 5:24-cv-02720-BFM

13
            Plaintiff,

**MEMORANDUM OPINION**
**AND ORDER**

14          v.

15 FRANK J. BISIGNANO,[1]
Commissioner of Social Security,

16
            Defendant.

17

18 **I.    PROCEDURAL HISTORY**

19      On April 20, 2022, Plaintiff Cyndi W. P.[2] applied for Disability Insurance

20 Benefits, alleging a disability beginning March 1, 2019. (Administrative Record

21 ("AR") 208-09.) Plaintiff's application was denied at the initial level of review

22 and on reconsideration, after which she requested a hearing before an

23 Administrative Law Judge ("ALJ"). (AR 71-101, 122.) On October 26, 2023, the

24

25      [1] Frank J. Bisignano became the Commissioner of Social Security on May 6,

26 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is
hereby substituted for Carolyn Colvin as the defendant in this suit.

27

28      [2]  In the interest of privacy, this Report and Recommendation uses only the
first name and last initials of the non-governmental party in this case.

1    ALJ held a hearing and heard from Plaintiff and a vocational expert. (AR 37-

2    70.) After considering the evidence, the ALJ issued an unfavorable decision. (AR

3    21-31.)

4        The ALJ found at step two of the disability analysis[3] that Plaintiff suffered

5    from severe lumbar spine degenerative disc disease, asthma, and hearing loss.

6    (AR 23.) The ALJ found that several other medically determinable conditions,

7    including Plaintiff's carpal tunnel syndrome, were not severe. (AR 24.) The ALJ

8    found Plaintiff retained a residual functional capacity ("RFC")[4] for light work

9    with certain limitations: (1) occasional climbing of ramps and stairs, balancing,

10   stooping, kneeling, and crouching; (2) no climbing of ladders, ropes, or scaffolds,

11   and no crawling; (3) no work at unprotected heights or around dangerous

12   moving machinery; (4)  no commercial driving work; (5) occasional exposure to

13   dust, odors, fumes, pulmonary irritants, extreme cold and vibration; and (6) an

14   environment with no more than moderate noise. (AR 26-29 (finding "generally

15   persuasive" the only medical opinions in the record, those of the state agency

16   physicians on initial and reconsideration review, and rejecting Plaintiff's

17   subjective statements suggesting greater limitations).) At step four, the ALJ

18   found Plaintiff would be capable of performing her past relevant work as an

19   accounting clerk, appointment clerk, and security guard as those jobs are

20   actually and generally performed. (AR 30-31 (adopting vocational expert

21   testimony at AR 62-69).) The ALJ thus concluded that Plaintiff was not disabled

22   from the March 1, 2019, alleged onset date through the November 28, 2023,

23   decision date. (AR 31.)

24

25        [3] A five-step evaluation process governs whether a claimant is disabled. 20

26   C.F.R. § 404.1520(a)-(g)(1). Only the steps relevant to the issues raised are
     discussed herein.

27

28        [4] An RFC is what a claimant can still do despite existing exertional and
     nonexertional limitations.  *See* 20 C.F.R. § 404.1545(a)(1).

1    The Appeals Council denied Plaintiff's request for review of the ALJ's

2    decision. (AR 7-9.) Dissatisfied with the Agency's resolution of her claim,

3    Plaintiff filed a Complaint in this Court.

## II.    STANDARD OF REVIEW

5    Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision

6    to deny benefits to determine if: (1) the Commissioner's findings are supported

7    by substantial evidence; and (2) the Commissioner used correct legal standards.

8    *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008);

9    *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).

10    "Substantial evidence. . .  is 'more than a mere scintilla.' It means—and only

11    means—'such relevant evidence as a reasonable mind might accept as adequate

12    to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations

13    omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014).

14    To determine whether substantial evidence supports a finding, the reviewing

15    court "must review the administrative record as a whole, weighing both the

16    evidence that supports and the evidence that detracts from the Commissioner's

17    conclusion." *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998). "If the

18    evidence can reasonably support either affirming or reversing," the court "may

19    not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

## III.    DISCUSSION

21    Plaintiff raises two issues in this Court: (1) that substantial evidence does

22    not support the ALJ's RFC assessment because the ALJ failed to properly

23    consider her carpal tunnel syndrome and asthma; and (2) that the ALJ

24    impermissibly rejected Plaintiff's testimony suggesting greater limitations from

25    her asthma than the ALJ found to exist. (ECF 11 at 5-12.)

26    For the reasons set forth below, the Court determines that the ALJ's

27    decision should be reversed and this matter remanded because the ALJ erred in

28

1  his consideration of Plaintiff's testimony concerning her asthma-related

2  limitations. The Court therefore need not reach Plaintiff's other challenges.

3  **A.    The ALJ Materially Erred in Considering Plaintiff's Asthma-**

4  **Related Symptom Testimony**

5  Plaintiff argues that the ALJ erred because he (1) did not include in

6  Plaintiff's RFC assessment certain limitations that flowed from Plaintiff's

7  asthma—in particular, her need for additional unscheduled breaks to

8  accommodate Plaintiff's one-hour nebulizer treatments four or more times a

9  day; and (2) did not provide a clear and convincing reasons, supported by

10  substantial evidence, for discounting her testimony that she would require such

11  breaks. (ECF 11 at 8-12.) Both these arguments turn on whether the ALJ

12  properly rejected Plaintiff's subjective symptom testimony concerning her

13  treatments.

14  **1.    Legal Framework**

15  Where a claimant testifies about subjective medical symptoms, an ALJ

16  must evaluate such testimony in two steps. First, the ALJ must determine

17  whether the claimant has presented objective medical evidence of an underlying

18  impairment that could "reasonably be expected to produce the pain or other

19  symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

20  (citation and quotation marks omitted).

21  Second, if the claimant meets that first standard and there is no evidence

22  of malingering, the ALJ can reject the claimant's testimony only by offering

23  "specific, clear and convincing reasons for doing so." *Id*. (citation and internal

24  quotation marks omitted). An ALJ "is not required to believe every allegation of

25  disabling pain, or else disability benefits would be available for the asking, a

26  result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th

27  489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the

28  same time, when an ALJ rejects a claimant's testimony, he must "specify which

4

1  testimony she finds not credible, and then provide clear and convincing reasons,

2  supported by evidence in the record," to support that determination. *Brown-*

3  *Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). General or implicit

4  findings of credibility will not suffice; the ALJ must show his work. *Smartt*, 53

5  F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

6  1102 (9th Cir. 2014).

7  　　　Judged by that standard, the ALJ's reasons and explanation for

8  discounting Plaintiff's testimony about her asthma-related symptoms were not

9  sufficient.

10  　　　　　**2.　　Plaintiff's Testimony**

11  　　　Plaintiff testified about several of her impairments (AR 58-61),[5] but

12  challenges only the ALJ's consideration of her testimony relating to her asthma.

13  (ECF 11 at 9-12.) On that point, she testified that she would not be a reliable

14  employee because she would have to take extra breaks during a workday for

15  breathing treatments. (AR 57-58, 61.)

16  　　　Plaintiff described a typical day: she wakes, takes half a pain pill and rests

17  until she is less stiff and can get out of bed. (AR 54.) Once out of bed, she

18  prepares her first nebulizer breathing treatment, which takes about an hour.

19  (AR 54-56.) After that first treatment, Plaintiff goes for a walk so she can clear

20  her lungs, sits in her hot tub for about an hour to address soreness, eats, and

21  then does another breathing treatment which takes 30 to 40 minutes. (AR 55.)

22  　　　After that second treatment, she goes over her schedule with her

23

24  　　　[5] Specifically, Plaintiff testified she is in bed five days a month from pain,
cannot sit or stand for more than 15 minutes, must constantly change positions,

25  must take pain medication which makes her drowsy and prevents her from
driving and from being alert and oriented, must elevate her legs above her heart

26  for six to eight hours a day due to swelling, and always uses a cane and uses a

27  walker once a month. (AR 58-59.) None of these comments appear related to
Plaintiff's asthma, which is the focus of her claim in his Court.

28

1    caregiver, elevates her legs for swelling from venous insufficiency, and then does

2    another breathing treatment at lunch, which takes an hour. (AR 55.) Plaintiff

3    spends the next hour clearing her lungs, she will lie down and read or crochet,

4    then take a pain pill and nap. (AR 55.) At the end of the day, she takes a pain

5    pill and does another breathing treatment before she goes to bed.  (AR 54-56.)

6         Plaintiff testified that she regularly does four breathing treatments a day,

7    but will do "a lot" more when the weather changes. (AR 56.)  She said she is

8    prescribed enough medication to do four treatments of one of her solutions, and

9    three treatments of another, or up to seven breathing treatments a day if she

10    needs them. (AR 56.)  She had been using a nebulizer for more than 20 years.

11    (AR 56-57.) In terms of activity, she could fold laundry when her caregiver

12    brings it to her, and can make her bed, but she did not use a vacuum or bend or

13    stoop because she loses her balance and falls. (AR 57.)

### 3.    The ALJ's Decision

15    The ALJ summarized Plaintiff's testimony and agreed that Plaintiff's

16    impairments "could reasonably be expected to cause the alleged symptoms." (AR

17    26.) The ALJ concluded, however, that Plaintiff's statements concerning the

18    intensity, persistence, and limiting effects of these symptoms is "not entirely

19    consistent with the medical evidence and other evidence in the record." (*Id.*)

20    The ALJ discussed at length his reasons for discounting Plaintiff's

21    testimony concerning her back issues, but Plaintiff does not challenge the

22    validity of those reasons. (AR 27-28.) Regarding Plaintiff's asthma, the ALJ

23    acknowledged that Plaintiff reported flare-ups on numerous occasions and had

24    "characteristic symptoms" including wheezing and dyspnea with exertion. (AR

25    28 (citing AR 370, 376, 401, 466, 493, 2330).) He acknowledged her testimony

26    that flare-ups occur once a month. (*See* AR 28 (citing AR 370 (March 2022 note

27    reporting exacerbation of symptoms once a month for the past three months);

28    AR 376 (earlier March 2022 note not mentioning frequency of flare-ups).) He

1    noted her prescriptions for inhalers and nebulizers, along with her reported

2    increased need for breathing treatments during flare-ups. (AR 28 (citing AR

3    1784).) He also noted that she sometimes required antibiotics and Prednisone.

4    (AR 28 (citing AR 401-02, 466, 493).)

5          Ultimately, however, the ALJ did not fully credit Plaintiff's testimony

6    about the severity of her condition. He found that, while Plaintiff testified that

7    she requires four to seven one-hour breathing treatments per day, as well as

8    inhalers between treatments, she never reported such "frequency" of treatment

9    in the treatment notes—even during flare-ups and acute respiratory infections.

10    (AR 28 (citing AR 376, 401, 466, 493, 1332, 1784, 2277, 2330).) Her most recent

11    treatment note reflected that her asthma was "moderate persistent, controlled,"

12    she had no emergency room visits or hospitalizations for her asthma, and she

13    generally had normal pulmonary examinations, even during flare-ups. (AR 28

14    (citing AR 2555).) Finally, a December 2022 report reflected that she was

15    "relatively active" and able to do her activities of daily living in December 2022.

16    (AR 28 (citing AR 386, 405, 1610, 1614, 2281, 2399, 2555, 2638).)

17          **4.    Analysis**

18          The ALJ gave three reasons for discounting Plaintiff testimony about her

19    nebulizer use: (1) the lack of corroboration of the frequency of use of breathing

20    treatments in the medical records; (2) evidence that her condition was

21    "controlled"; and (3) evidence of her level of activity. None of these reasons

22    withstands scrutiny.

23          First, the ALJ found that while Plaintiff said she required four to seven

24    one-hour breathing treatments per day, plus inhalers, she "never reported such

25    frequency of treatment in the treatment notes." (AR 28.) An ALJ may rely, at

26    least in part, on a *lack* of supporting objective medical evidence in rejecting

27    Plaintiff's subjective testimony and statements. *See Burch v. Barnhart*, 400

28    F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form

1  the sole basis for discounting pain testimony, it is a factor the ALJ can consider

2  in his [or her] credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857

3  (9th Cir. 2001) (same).

4        Contrary to the ALJ's suggestion, however, there is plentiful evidence

5  supporting Plaintiff's testimony. Throughout the alleged disability period,

6  Plaintiff was noted to be using her nebulizer solutions "as prescribed"—and

7  "as prescribed" was up to four times a day for Albuterol and Mucomyst, as

8  needed, and up to four times a day for Atrovent, as needed. (AR 370, 376, 381,

9  386, 401-03, 415, 420, 423, 426, 444, 460-61, 467, 520, 533, 535, 537, 541, 562,

10  572, 573, 1564, 1577, 1606, 1614, 1709, 1711, 1800, 1821, 1824, 1828, 2252,

11  2280, 2292, 2297, 2300, 2398, 2501, 3158-59, 3179-80 (treatment notes from

12  August 2019 through July 2023 noting "Outpatient Medications Marked as

13  Taking" as of these visits).)

14        In addition, the record reflects instances of Plaintiff reporting use of her

15  nebulizer four times a day or more. In January 2021, Plaintiff reported she was

16  using Albuterol and Mucomyst three to four times a day for her daily coughing

17  from bronchiectasis, but she was having more mucus production. (AR 459-60.)

18  Her doctor told her to also use Atrovent every six hours as needed. (AR 461.)

19  Plaintiff reported in March 2023, the latest follow-up visit for her

20  bronchiectasis, that she then was using her nebulizer three times a day and was

21  having more mucus production. (AR 2487.) Her pulmonologist told her to use

22  Mucomyst four times a day, and to use Albuterol and Atrovent as needed. (AR

23  2487-88.) These directions were given to address Plaintiff's bronchiectasis

24  symptoms, which the ALJ (and the state agency physicians) did not distinguish

25  from Plaintiff's asthma. (AR 28, 75-82, 92-97.) Whether Plaintiff *reported* using

26  her nebulizer as frequently as she claims, her doctors prescribed and *told her* to

27  use the nebulizer four or more times a day. Plaintiff's asserted failure to report

28

1    the frequency of her treatment at the levels she claimed is not a clear and

2    convincing reason for discounting Plaintiff's testimony.[6]

3    　　　The ALJ next cited facts reflecting that Plaintiff's asthma was well

4    managed: that the records described her condition as controlled, that her

5    pulmonary examinations were normal even during flareups, and that she has

6    not had to seek emergency treatment or hospital stays to treat her asthma.

7    These are also not clear and convincing reasons for discounting her testimony

8    about her nebulizer use. To be sure, evidence suggesting a claimant's symptoms

9    are managed or improve with treatment may be a clear and convincing reason

10   for rejecting disabling symptoms. *See Wellington v. Berryhill*, 878 F.3d 867, 876

11   (9th Cir. 2017) ("evidence of medical treatment successfully relieving symptoms

12   can undermine a claim of disability"); *Warre v. Comm'r of Soc. Sec. Admin.*, 439

13   F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively

14   with medication are not disabling for the purpose of determining eligibility for

15   SSI benefits."). It is not, however, a basis to reject testimony that the treatment

16   itself would be work preclusive. Here, Plaintiff did not testify that her asthma

17   was not fairly well controlled; instead, the import of her testimony was that she

18   had achieved some control over her condition precisely because she was able to

19   treat her condition with frequent nebulizer treatments, treatments of such

20   frequency and duration that they would impact her ability to work. As such, the

21   "controlled" nature of her asthma does not undermine Plaintiff's testimony; it is

22   not inconsistent with that testimony.

23   　　　Finally, the ALJ cited a single treatment note reporting that Plaintiff was

24   "relatively active" and able to do activities of daily living. (AR 28 (citing AR

25

26   _____

27   　　　[6] The ALJ discussed the *frequency* of treatments. To the extent he meant to
     include within that scope the duration of the treatments, the Court agrees with
     Plaintiff; there would be no reason for Plaintiff to report to her doctors how long

28   the prescribed treatments took to administer.

9

1    2399).) This, too, is also not particularly persuasive. It is true that where a

2    claimant engages in "daily activities that are incompatible with the severity of

3    symptoms alleged," that can be a basis to discount subjective symptom

4    testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citing *Ghanim*

5    *v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)). The note the ALJ cited was from

6    a 10-minute pain management telephone appointment in December 2022 and

7    solely stated that Plaintiff could "do ADL and be relatively active in current

8    regimen." (AR 2398-99.) The note did not explain which activities Plaintiff could

9    do, what "relatively active" meant, or indicate whether Plaintiff's activity level

10   was inconsistent with her need for nebulizer treatments. (AR 2399.) By contrast,

11   Plaintiff testified to activity, such as walking, that she fit in around her

12   nebulizer treatments. (AR 54-57.) ALJs must be mindful of the difference

13   between activities at home and the requirements of work—a place "where it

14   might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885

15   F.2d 597, 603 (9th Cir. 1989) (internal citations omitted), *superseded on other*

16   *grounds by* 20 C.F.R. § 404.1502(a).[7] In short, the ALJ did not use permissible

17   bases to discount Plaintiff's asthma-related testimony.

18        Moreover, any error with respect to the nebulizer testimony is not

19   harmless. The vocational expert testified that a person with Plaintiff's RFC

20   could do Plaintiff's past relevant work. (AR 63-65.) At the same time, he testified

21   that, if a hypothetical person were off task more than 15 percent of a workday

22   (as may be the case if she required four or more one-hour breathing treatments

23

---

24        [7] "The critical differences between activities of daily living and activities in
25   a full-time job are that a person has more flexibility in scheduling the former
     than the latter, can get help from other persons. . . and is not held to a minimum
26   standard of performance, as she would be by an employer. The failure to
     recognize these differences is a recurrent, and deplorable, feature of opinions by
27   administrative law judges in social security disability cases." *Bjornson v. Astrue*,
     671 F.3d 640, 647 (7th Cir. 2012) (citations omitted) (cited with approval in
28   *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

1  a day), there would be no jobs that person could perform. (AR 66-67.) This

2  testimony was therefore crucial to the ALJ's decision.

3      Defendant's brief discusses the ALJ's reasons for rejecting Plaintiff's

4  testimony concerning other impairments to suggest that the ALJ showed his

5  work and did not arbitrarily discredit Plaintiff's symptom allegations. (ECF 12

6  at 7-9.) To be affirmed, however, the ALJ must provide an adequate reason to

7  reject *this* testimony concerning her asthma treatments. *Reddick*, 157 F.3d at

8  722 (""General findings are insufficient; rather, the ALJ must identify what

9  testimony is not credible and what evidence undermines the claimant's

10  complaints."). He did not. Remand is therefore warranted.

## IV. REMAND FOR FURTHER PROCEEDINGS

12      Remand (as opposed to an outright grant of benefits) is appropriate as the

13  circumstances of this case suggest that further administrative proceedings

14  could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th

15  Cir. 2015) ("Unless the district court concludes that further administrative

16  proceedings would serve no useful purpose, it may not remand with a direction

17  to provide benefits."); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

18  1101, n.5 (9th Cir. 2014) (remand for further administrative proceedings is the

19  proper remedy "in all but the rarest cases"). As the ALJ failed to provide

20  persuasive reasons for rejecting Plaintiff's asthma-related testimony, remand is

21  appropriate. *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand

22  for further proceedings rather than for the immediate payment of benefits is

23  appropriate where there are "sufficient unanswered questions in the record").

## V.   ORDER

25      For all the foregoing reasons,[8] IT IS ORDERED that:

27      [8] The Court has not reached any other issue raised by Plaintiff except to

28  determine that reversal with a directive for the immediate payment of benefits (cont'd . . .)

11

1    (1) the decision of the Commissioner is REVERSED, and this matter is

2    REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for

3    further administrative proceedings consistent with this Memorandum

4    Opinion and Order; and

5    (2) Judgment be entered in favor of Plaintiff.

6

7    DATED: October 21, 2025    _____

8    BRIANNA FULLER MIRCHEFF
     UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

---

24    would not be appropriate at this time. *See Hiler v. Astrue*, 687 F.3d 1208, 1212
25    (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated,
      we decline to reach [plaintiff's] alternative ground for remand."); *see also*
26    *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal.
      2008) ("[The] Court need not address the other claims plaintiff raises, none of
27    which would provide plaintiff with any further relief than granted, and all of
      which can be addressed on remand.").
28

12